Milton MADISON et al., Appellants,

v.

William Earl WHITTLE, Appellee.

Court of Appeals of Kentucky.

Oct. 15, 1954.

Rodes K. Myers, Bowling Green, B. M. Vincent, Brownsville, for appellants.

Chas. E. Whittle, T. H. Denunbrun, Brownsville, Rodes Bratcher, Morgantown, for appellee.

CLAY, Commissioner.

In 1946, when she was about 60 years old, Myrtle Whittle executed a will devising and bequeathing all of her property to her nephew, the appellee. It was prepared by a bank official and properly executed. This suit was brought by appellants, decedent's brother and half brothers and half sisters, to contest the will on the ground she lacked mental capacity.

A properly instructed jury found for the will. On this appeal appellants contend the verdict was contrary to the law and evidence.

A substantial amount of evidence for the contestants related to the physical condition of the decedent. During the last 10 years of her life she suffered from high blood pressure, had dizzy spells, was treated for a liver ailment, and exhibited signs of nervousness. In addition, she was often forgetful and she permitted her brother to handle many of her business transactions. Four lay witnesses testified to the effect that she lacked mental capacity, but some of this proof related to a period shortly before her death which was over four years after she had executed the will. Three of the contestants expressed the opinion that she was incapable of making a will during the last few years of her life.

A doctor who said he had treated the decedent off and on for approximately 20 years testified in answer to a hypothetical question that from his observation and treatment of her he did not think that she had mental capacity to recognize her natural duty and dispose of her property as a free agent. Another doctor, who had not treated the decedent, in answer to a hypothetical question gave his opinion that in view of her physical condition and her actions, it was "quite possible" for her mind to be seriously affected.

■ In support of the will, it was shown that decedent's nephew, to whom she left all of her property, was the only child of a sister with whom she had always maintained the closest relationship. Before the execution of the will she had told others that she intended to leave all of her property to this nephew. He was a natural object of her bounty.

Many of decedent's close neighbors testified in substance that she was perfectly competent to conduct her own affairs at all times until shortly before her death. A doctor who had seen her approximately 35 times during a period of a little over a year, commencing shortly after she executed her will, testified that she had no mental abnormality.

■ A careful examination of all of the evidence presented convinces us there was abundant evidence to support the finding of the jury that the decedent had sufficient mental capacity when she executed her will. Therefore the principal ground upon which appellants rely for reversal cannot be sustained.

The other ground for reversal is that the court erred in refusing to permit a doctor to introduce the official records of the treatment given the decedent while attending a medical clinic. These records showed treatment for high blood pressure, kidney trouble and indigestion. The apparent purpose of introducing them was to lay a foundation for the doctor's opinion concerning the effect of her physical condition upon her mental capacity. The avowal made by the doctor and his subsequent answer to a hypothetical question, including her physical ailments, was to the effect that there was a possibility that the patient's mentality could be affected.

■ Without deciding whether or not the clinic records should have been admitted in evidence, their exclusion could not have been prejudicial to appellants. Decedent's physical condition had been fully shown by other evidence, and was presented to the jury in the form of hypothetical questions directed to two doctors. Since decedent's mental capacity, not her physical condition, was in issue, the records had no independent significance. If the exclusion of these records was error, which we do not decide, it was harmless. See CR 61.-01.

The judgment is affirmed.